UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-2465-BLG

**In re:**
**YARB MWAFFAQ JAMEL AL-ETHARY,**

    **a Material Witness.**
_____/

**COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

                           Respectfully submitted,

                           WIFREDO A. FERRER
                           UNITED STATES ATTORNEY

          BY: _____
                 VANESSA SINGH JOHANNES
                 ASSISTANT UNITED STATES ATTORNEY
                 Court ID No. A5501644
                 99 N. E. 4th Street
                 Miami, Florida 33132-2111
                 TEL (305) 961-9023
                 FAX (305) 536-4676

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| In re: ) | Case No. 14-2465-BLG |
| ) | |
| **YARB MWAFFAQ JAMEL AL-ETHARY,** ) | |
| ) | |
| a Material Witness. ) | |
| ) | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

On or about April 18, 2014, in Miami-Dade County, in the Southern District of Florida, YARB MWAFFAQ JAMEL AL-ETHARY was a material witness in two criminal proceedings against Christopher Rennie GLENN, both pending in the Southern District of Florida – a federal grand jury inquiry and an indicted case (14-cr-80031-KAM(s)).  AL-ETHARY's presence is required before a federal grand jury and at a deposition.

It is impractical to secure the presence of AL-ETHARY by subpoena; therefore, he is being detained pursuant to Title 18, United States Code, Section 3144.

See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

FBI Special Agent Bradley Howell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/18/2014

_____
Judge's signature

City and state: Miami, FL

Magistrate Judge Barry L. Garber, SDFL
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST & DETENTION OF A MATERIAL WITNESS

I, Special Agent Bradley Howell, Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I have been an FBI Special Agent since February 13, 2011. As a Special Agent, I am responsible for conducting investigations into violations of federal law. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is merely intended to show that there is sufficient probable cause for the arrest and detention of a material witness, Yarb Mwaffaq Jamel AL-ETHARY. As such, it does not set forth all of my knowledge about this matter.

### PURPOSE OF THE AFFIDAVIT

2. This Affidavit is made in support of the arrest and detention of **YARB MWAFFAQ JAMEL AL-ETHARY** ("AL-ETHARY"), a New Zealand citizen presently at the Federal Detention Center ("FDC"), 33 Northeast 4th Street, Miami, Florida 33132. Since March 12, 2014, AL-ETHARY has been held as a material witness in a federal grand investigation of Christopher Rennie GLENN for violations of 18 U.S.C. §§ 2423(b) and (c), that is, traveling with the intent to engage in, and engaging in, illegal sexual conduct in foreign places.

3. More recently, law enforcement has learned, and has probable cause to believe, that AL-ETHARY may have knowledge about separate criminal conduct committed by GLENN, for which GLENN has been indicted and on which his trial is pending (see *United States v. Christopher R. Glenn*, 9:14-cr-80031-KAM(s)).

1

4.      As such, this Affidavit is made in support of the continued arrest and detention of AL-ETHARY, as he is a material witness to both the federal grand jury investigation of, and the indicted case against, GLENN. The United States intends on calling AL-ETHARY as a witness before the federal grand jury on or around April 22, 2014, and deposing AL-ETHARY on or around May 7, 2014.

## PROBABLE CAUSE

- **Grand Jury Investigation Into Child Exploitation Charges**

5.      In or around October 2013, law enforcement agents in Comayagua, Honduras, received information from a source (the "Source") that a foreign citizen residing in Comayagua, GLENN, had minor females living with him. The Source stated that he met GLENN in or around January 2012, and knew that GLENN had minor females living in his residence as "workers." The Source further stated that he heard the minor females crying inside of the residence.

6.      Law enforcement agents in Honduras conducted an investigation into these allegations. They spoke to two minor females who had previously been in contact with GLENN – Victim 1 and Victim 2 (collectively, the "Victims"). Both Victims lived in poor village towns, several hours away (by vehicle) from Comayagua. In addition, law enforcement agents in Honduras spoke to the Victims' relatives and others in their villages. From these interviews, agents learned that GLENN, along with other coconspirators, came to the villages, and provided food, clothing, and other necessities to the residents. Shortly thereafter, GLENN and other associates or co-conspirators told the elders in the villages that they were working for religious organizations, and that they needed maids and cooks to help them in Comayagua. GLENN paid the Victims' parents money, and in exchange, the Victims traveled back to Comayagua with

GLENN and his coconspirators under the premise that they were to work temporarily as domestic employees for GLENN.

7. Victim 1, a minor female, was interviewed. She stated the following about her relations with GLENN, whom she knew as "Yosef" and "Gringo": In or around April 2012, Victim 1, then fourteen years old, went to Comayagua with GLENN. Upon her arrival at his residence, GLENN asked her to marry him. After a short ceremony, which was video recorded, Victim 1 was presented with a paper, which contained her full name, and was told that she was now married to GLENN. A few hours later, she was provided with two pills, which she was told were vitamins. She felt light-headed and went to lie down. She woke up the next day – naked and confused. GLENN was present. Another female was present and explained to Victim 1 that both she and Victim 1 were GLENN's wives. Victim 1 asked GLENN several questions; he did not answer her. Victim 1 stated that she started crying. She wanted to leave GLENN's residence, but was not permitted to do so at that time. According to Victim 1's mother, Victim 1 was returned to the village approximately three days later. GLENN again paid the family money for Victim 1's "work."

8. Victim 2, also a minor female, was interviewed as well. She stated the following about her relations with GLENN, whom she knew as "Yosef": In or around April 2012, GLENN, along with other men, arrived at her village. Victim 2 was then fifteen years old. The men asked Victim 2's parents if she could work for them, and promised a lump sum of money in return for her services. She was told that she would be working near Lago de Yojoa, a popular tourist area. Victim 2 went to work for the men.

3

9. She was taken to an associate or co-conspirator's residence in Comayagua. The next day, GLENN arrived at that residence. Victim 2 was told that she was not there to work, but to marry GLENN. Victim 2 was told that her parents already consented to the marriage.

10. That same afternoon, Victim 2 was told to change her clothing for a marriage ceremony. Victim 2 was forced to participate in the marriage ceremony, which she stated was video recorded. Victim 2 was given two pills by GLENN, which she was told were vitamins. Three days later, she woke up, in a confused state. GLENN was present. On the bed where she awoke, there was blood. She was wearing new clothing. Prior to meeting GLENN, Victim 2 was a virgin.

11. Victim 2 was told to get up. She was told to start doing laundry and other chores. She asked to call her parents; her request was denied. Victim 2 was told that she signed marriage documents and that, legally, she was GLENN's wife. Victim 2 remained at GLENN's residence for several months. Each day, GLENN would rape Victim 2. GLENN told Victim 2 that she had to perform the sexual acts because she was his legal wife.

12. According to Victim 2, a few months later, GLENN left the country. The Source referenced in paragraph 5 confirmed that GLENN, a Muslim convert, left Honduras during the time of Ramadan. Victim 2 was told, by an associate or co-conspirator of GLENN's, that GLENN went to Iraq. Victim 2 stayed with that associate or co-conspirator during that time, and was not permitted to leave. GLENN returned to Comayagua several weeks later. He brought a burka for Victim 2 to wear, and instructed her to wear the burka at all times. Victim 2 stated that GLENN stayed in Comayagua for fifteen days, and that she was forced to have sex with him each day. He then left the country again.

13. When GLENN again returned to Honduras, Victim 2 recalled that he and an associate or co-conspirator took her to remote village towns in Honduras to "look for" other girls (or, as Victim 2 stated, "guirras"). Victim 2 was allowed to dress in normal attire when going to the villages. Victim 2 stated that some of the girls in the town of Pacaya refused to go with GLENN and his coconspirator. However, they were successful in recruiting another minor female. Specifically, Victim 2 observed GLENN and his associate or co-conspirator offer money to a young girl's parents, in exchange for the fourteen year old girl to come "work" for them. The girl came to live with GLENN and Victim 2 in Comayagua.

14. Shortly after the girl came to Comayagua, Victim 2 observed the girl in a bedroom with GLENN and his coconspirator. The girl appeared to be passed out, and was lying on the bed. Victim 2 was advised not to come in the room, and so Victim 2 went to another part of the residence. The day after Victim 2 saw this, she again saw the girl. The girl was crying profusely, and told Victim 2 that she wanted to leave and that she did not want to be married to GLENN. The next day, GLENN took the girl back to her village. Victim 2 was in the vehicle. She observed GLENN give the girl's parents money.

15. Victim 2's parents were interviewed. They corroborate her statements. Further, her parents stated that, when their daughter did not return to their village, they contacted local police. Local law enforcement personnel approached an associate or co-conspirator of GLENN's to inquire about Victim 2. Shortly thereafter, GLENN returned Victim 2 to her village. When he returned Victim 2, he paid her parents $25,000 Honduran lempiras (equivalent to approximately $1,500 USD) and told them to "build a new house."

16. GLENN's travel records show the following travel from the United States to Honduras between March 2012 and May 2013: (a) on March 6, 2012, GLENN traveled from

5

Fort Lauderdale, Florida ("FLL"), to Ramon Villeda Morales International Airport, outside of San Pedro Sula, Honduras (that is, "SAP"); (b) on May 19, 2012, GLENN traveled from Miami, Florida ("MIA"), to Toncontin International Airport, Tegucigalpa, Honduras (that is, "TGU"); (c) on July 10, 2012, GLENN traveled from FLL to SAP; (d) on October 12, 2012, GLENN traveled from FLL to SAP; (e) on February 26, 2013, GLENN traveled from FLL to SAP; and (f) on May 12, 2103, GLENN traveled from FLL to SAP.

17. GLENN had no lawful employment in Honduras from October 2012 onward. Further, law enforcement knows of no religious organization or other non-governmental organization for which GLENN was lawfully working in Honduras. The Source stated that GLENN had access to a lot of money, and always had money at his residence in Comayagua.

- **Indictment Against GLENN**

18. Since February 27, 2014, GLENN has been detained in West Palm Beach, Florida, on federal charges (separate from the criminal allegations described above). (*See United States v. Christopher R. Glenn*, 9:14-cr-80031-KAM(s).) Among other criminal acts, GLENN is charged with naturalization fraud, theft of government property, and computer intrusion.

- **AL-ETHARY as a Material Witness**

19. AL-ETHARY is a material witness in both the grand jury investigation of, and the indicted case against, GLENN, as he has knowledge relevant to both criminal proceedings.

20. Specifically, on March 4, 2014, AL-ETHARY was detained by the United States Border Patrol at the Federal Courthouse in West Palm Beach, Florida, after he attended the initial appearance of GLENN on the indicted case. Subsequent to his detention, AL-ETHARY voluntarily agreed to speak to law enforcement. Among other statements, AL-ETHARY stated

that he came to West Palm Beach, Florida, to support his close friend, GLENN, who is facing federal criminal charges.

21. AL-ETHARY stated that he visited GLENN in Honduras on one occasion in 2013. He stated that GLENN had young females living with him, but that AL-ETHARY believed that they were eighteen years old. AL-ETHARY stated that the females shared a bedroom with GLENN. AL-ETHARY stated that he accompanied GLENN when GLENN returned Victim 2 to her parents. AL-ETHARY stated that he overheard GLENN speaking to Victim 2's parents; however, he does not speak Spanish and did not understand the conversation. AL-ETHARY stated that he saw GLENN give Victim 2's parents various goods, such as rice, beans, and soda. Accordingly, AL-ETHARY has relevant information related to the ongoing federal grand jury investigation.

22. Further, AL-ETHARY's knowledge of GLENN's whereabouts and activities during his 2013 visit to Honduras is relevant to the naturalization fraud charges. Moreover, having visited with GLENN in Honduras, AL-ETHARY has personal knowledge of GLENN's computer, storage media, and other electronic use in Honduras, which is relevant to the national security-related offenses. Accordingly, AL-ETHARY has relevant information related to the indicted case.

- **AL-ETHARY's Legal Status in the United States**

23. AL-ETHARY is an Iraqi-born naturalized citizen of New Zealand, who is being held at the Federal Detention Center in Miami, Florida. He is illegally in the United States and faces repatriation to New Zealand by the Department of Homeland Security upon his release from federal custody.

24.     AL-ETHARY is not contesting his removal from the United States. Once AL-ETHARY appears before the grand jury, is deposed, and his removal paperwork has been processed, he will be sent back to New Zealand. The United States will be unable to secure his presence by subpoena once he is removed.

## CONCLUSION

25.     Based upon the above, I submit that YARB MWAFFAQ JAMEL AL-ETHARY is a material witness in two ongoing criminal proceedings against CHRISTOPHER GLENN, and that it is impractical to secure AL-ETHARY's presence by subpoena. Therefore, the arrest and detention of this material witness is necessary, pursuant to Title 18, United States Code, Section 3144.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
Special Agent Bradley Howell
Federal Bureau of Investigation

Subscribed and sworn to before me,
on this ___ day of April, 2014, in Miami, Florida:

_____
HONORABLE BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

8